# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL WILLIAMS,** | : | **Civil No. 3:12-CV-1235** |
| | : | |
| **Plaintiff** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **BLEDSOE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

In this action we are again confronted by allegations of repeated incidents of inmate-on-inmate violence within the Special Management Unit at the United States Penitentiary at Lewisburg.  This case also highlights some of the administrative burdens that prisoner litigants like the plaintiff face, and the significant impact that may potentially follow when these burdens are not fully satisfied.  Moreover, this case presents an example of the limitations that inmates face in attempting to bring negligence claims against the United States based on prison officials' failure to protect them from violence at the hands of others.  At the same time, this case also presents the Court with a disputed factual record that militates against granting the preliminary dispositive motion that the defendants filed at the outset of this action.

The plaintiff in this case, Darrell Williams, has brought claims against the former warden of USP-Lewisburg, and several other prison officials or employees, alleging that these defendants were deliberately indifferent to the serious risk of harm he faced by being celled with two particular inmates in the fall and winter of 2010-2011. The plaintiff has pleaded that these defendants collectively did nothing in response to concerns he repeatedly raised about the possibility that he was in imminent danger of being assaulted by his cell mate in October 2010. As it turns out, the plaintiff's fears were well founded, and he was beaten by his cell mate, suffering serious injuries as a result of this attack, including a broken jaw which was wired shut in order to heal.

The plaintiff claims that even though his oral surgeon recommended that he not be re-celled with another inmate until his injuries had sufficient time to heal, despite having other physical vulnerabilities, and having allegedly developed a reputation as a "snitch" within the prison, the defendants elected to place him in another cell with a new inmate whom the plaintiff claims was in the same unidentified gang as his first assailant. Within weeks, in spite of once again allegedly repeatedly requesting that

he be transferred to a new cell, the plaintiff was attacked within his prison cell by his new cell mate, once again sustaining serious injuries.[1]

Plaintiff brought this action against a number of USP-Lewisburg officials and the United States in order to seek redress for the injuries he suffered in these attacks.[2] The plaintiff has alleged that the defendants were both deliberately indifferent to the serious risks of harm he faced from his cell mates, and he argues that the defendants were negligent with respect to their obligation to protect him against attack by fellow inmates. The plaintiff thus has brought <u>Bivens</u> claims against the individual defendants for alleged Eighth Amendment violations, and a negligence claim against the United States brought pursuant to the Federal Tort Claims Act.

--------

[1] The plaintiff claims that his jaw was re-broken during this second incident, and he claims to have suffered nerve damage and nausea as a result. The defendants, in contrast, claim the plaintiff suffered only lacerations during this second affray, and note that the medical professional who examined the plaintiff after the incident determined that he did not need follow up care by an oral surgeon.

[2] The individual defendants include Brian A. Bledsoe, the former Warden of USP-Lewisburg; John Adami, Unit Manager; D. Hudson, currently the Warden at the Federal Correctional Institution at Raybrook, who was an Associate Warden during the time period relevant to this case, B. Trate, currently an Associate Warden who was a Captain during the relevant time period in this case; Patrick Kissell, Case Manager; M. Vansickle, Correctional Officer; Suzanne Heath, a Special Investigative Agent with the BOP; and an unidentified "John Doe" officer-in-charge. In addition to these individual defendants, the plaintiff has sued the United States of America under the Federal Tort Claims Act.

The defendants have moved to dismiss the plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56(a). The motion is now fully briefed and ripe for disposition. For the reasons explained below, we recommend that the motion be denied at this time without prejudice to the defendants again moving for dispositive relief after the parties have an opportunity to engage in some discovery into the plaintiff's claims.

## II.   **BACKGROUND**[3]

Darrell Henry Williams is a federal inmate in the custody of the Bureau of Prisons. He is serving a 310-month sentence that was imposed for drug trafficking offenses and escape. During the times relevant to this action he was designated to be held at the United States Penitentiary at Lewisburg, within that institution's special management unit (SMU). Williams arrived at USP-Lewisburg on September 7, 2010.[4]

---

[3] The background to this report is taken from the allegations set forth in the plaintiff's amended complaint, and also from the defendants' statement of undisputed facts to the extent the facts are found to be relevant and effectively undisputed by the plaintiff.

[4] Williams has since been transferred to the United States Penitentiary in Beaumont, Texas.

Williams alleges that when he first arrived at USP-Lewisburg, he was initially celled alone because he had significant health problems, including a limp right leg, persistent back pain, and related side effects. (Doc. 3, Am. Compl. ¶ 15.) However, the day after his arrival at the prison, Williams was informed that he would be assigned a cell mate. Over Williams's objections to an unidentified corrections officer, he was soon thereafter celled with Qusai Mahasin.

Williams claims that in early October 2010, he began notifying defendants Vansickle, Kissell, Adami, Trate, and Bledsoe that he was experiencing unspecified problems with Mahasin, and he requested orally and in writing that he be transferred to another cell.[5] (Id. ¶¶ 16-37.) The defendants have submitted declarations in which they deny receiving letters from Williams, or that he made them known of his concerns regarding his cell mate. (Def. SMF., Exs. 4-10, Declarations.) In spite of his concerns and any requests he may have made to prison officials to be transferred to a new cell, it is undisputed that no action was taken to remove Williams from his cell assignment, although each of the individual defendants are unequivocal in

---

[5] The amended complaint does not contain allegations about what, exactly, Williams claims to have told the prison staff and officials about his problems with Mahasin. The only threat of physical harm that Williams says he communicated was to an unidentified officer-in-charge. (Am. Compl., ¶ 28.)

asserting that if they had received warnings from the plaintiff, they would have taken appropriate action.

After an incident in the early morning hours of October 22, 2010, however, that changed. Shortly after 1:00 a.m. on that day, Mahasin attacked Williams as he slept, subjecting him to a brutal assault. During this incident, Mahasin repeatedly struck Williams with his fists and elbows in the torso and head, ultimately breaking Williams's jaw, causing related injuries, and rendering Williams unconscious. (Id. ¶ 40.) Williams was thereafter escorted to an outside medical provider, and afterwards taken to the Geisinger Medical Center in Danville, Pennsylvania, where he alleges that he had his jaw wired shut. (Id. ¶¶ 41-42.) Immediately following this attack, Williams and Mahasin were listed as "separations" in the BOP database containing inmate housing assignment information. (Def. SMF ¶ 26; Ex. 2, Declaration of Matt Rodarmel, ¶ 6.) Williams claims that he was discharged from Geisinger on October 29, 2010, and returned to USP-Lewisburg. According to the amended complaint, Williams was placed on a liquid diet and suffered from severe pain for months following Mahasin's assault. (Am. Compl., ¶ 43.)

According to the plaintiff, the physician who oversaw Williams's treatment and surgery recommended that he be placed in a single cell while his jaw fully healed. (Id. ¶ 44.) Nevertheless, on December 25, 2010, Williams was forced to take another

6

cell mate, this time Augustus Quintrel White. The plaintiff claims that White was "known to be a member of the same gang as Mr. Mahasin," although evidence submitted under seal by the defendants disputes the veracity of this allegation.

Nevertheless, the plaintiff claims that on January 5, 2011, Light began threatening him with violence. Accordingly, Williams responded by notifying the defendants by letter that he wanted to be removed from his cell due to the problems that were developing with Light. (Id. ¶¶ 51-58.) The defendants are uniform in their sworn representations that they never received any correspondence from Williams regarding his concerns, and he was not removed from his cell, or took other steps to protect Williams during this time.

Williams's fears appear to have been well founded, as shortly before noon on January 13, 2011, Light assaulted Williams in their cell. (Id. ¶ 60.) Williams claims that Light re-broke his jaw during this assault, and that he was consequently hospitalized at Geisinger after the attack. (Id. ¶¶ 61-62.) Williams also claims that on January 26, 2011, he underwent a follow-up surgery during which his jaw was again wired shut.[6] (Id. ¶ 63.) Thus, Williams claims that as a result of these two

_____

[6] For their part, the defendants point to evidence showing that Williams suffered lacerations during this second assault, but that his jaw was not re-broken. The EMT who examined Williams after the attack determined he did not need a follow-up consult with the oral surgeon, and Williams was provided with pain medication. (Def. SMF ¶¶ 32-35.)

undisputed attacks, he was hospitalized for "a number of weeks and had his jaw wired shut for months."  (Id. ¶ 64.)  He also claims that he sustained lasting nerve damage, and that he suffers through continuing bouts of dizziness, nausea, and vomiting, and requires a regiment of medications to alleviate his pain.  (Id.)  He also claims to have suffered lasting psychological trauma as a result of these attacks, and that his condition negatively affects his mental and physical health.  (Id.)

## A.    Procedural History

The plaintiff, through counsel, commenced this action by filing a complaint on June 27, 2012.  (Doc. 1.)  The plaintiff amended the complaint on July 17, 2012. (Doc. 3.)  On December 18, 2012, the defendants filed the pending motion to dismiss or, in the alternative, for summary judgment.  (Doc. 7.)  On January 18, 2013, the defendants filed a brief in support of the motion, together with a statement of undisputed facts.  (Docs. 14, 15.)  The plaintiff filed a brief in opposition to the motion, along with a counter statement of material facts, on February 25, 2013. (Docs. 22, 23.)  The defendants filed a reply brief in further support of their motion on March 12, 2013.  (Doc. 24.)  This action was referred to the undersigned for purposes of preparing a report and recommendation on July 30, 2013.

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss - Rule 12(b)(6)

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for assessing the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

[B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

**B.      Summary Judgment - Rule 56**

Federal courts are permitted to summarily adjudicate an action in order to dispose of those claims that do not present a "genuine issue as to any material fact,"

Fed. R. Civ. P. 56, and for which a jury trial would, therefore, "be an empty and unnecessary formality," Peynado v. Sabol, No. 09-355, 2010 U.S. Dist. LEXIS 134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010). Rule 56 specifically provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## IV.  DISCUSSION

### A.  Because There Are Unresolved Questions About Whether Williams Properly Exhausted His Eighth Amendment Claims In Accordance With the PLRA and BOP Regulations, Dismissal of These Claims on Exhaustion Grounds is Improper

Defendants argue that summary judgment on Williams's Bivens claims is warranted because the plaintiff failed to exhaust the administrative remedies available to him before bringing this lawsuit, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat 1321 (1996). Williams suggests,

13

somewhat obliquely, that he did exhaust, or that his exhaustion of his FTCA claims has relevance to whether he exhausted his <u>Bivens</u> claims, or otherwise that further discovery into issues of exhaustion is necessary.

Although we disagree that the plaintiff's exhaustion of his FTCA claims has any bearing on whether he exhausted his administrative remedies relating to his <u>Bivens</u> claims, we find that the defendants have not sustained their burden of showing that the plaintiff failed to exhaust – indeed, the evidence the defendants have submitted suggests that the plaintiff may well have exhausted these claims. In any event, the state of the record is such that it would be inappropriate to dismiss or enter judgment in favor of the defendants on the plaintiff's <u>Bivens</u> claims at this early stage of the litigation.

The PLRA mandates that a prisoner present his claims through an administrative grievance process before filing claims for redress in federal court. <u>See</u> 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Furthermore, a prisoner is required under the PLRA to exhaust administrative remedies with respect to any claim that arises in the prison setting, notwithstanding any limitations on the kind of relief that may be obtained

through such grievance process.  See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (citation omitted).  Thus, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Id. at 71.  In addition, the PLRA requires that a prisoner "properly" exhaust administrative remedies before filing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 92 (2006).  In this regard, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90-91. These administrative requirements are intended to "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Id. at 93 (quoting Nussle, 534 U.S. at 525). Failure substantially to comply with procedural requirements of the applicable prison's grievance procedures will result a claim being deemed procedurally defaulted.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

The Bureau of Prisons has adopted a three-tiered administrative remedy procedure with respect to inmate complaints which is set forth at 28 C.F.R. § 542.10, et seq. As part of this grievance process, inmates should first present their complaints to staff, and staff are obliged to attempt to informally resolve any issues before an inmate files a formal request for Administrative Remedy. Id. at § 542.13(a). At the second stage of this process, if an inmate is unable to informally resolve his complaint, the inmate may file a formal written complaint to the Warden on the appropriate form within 20 calendar days of the date on which the events which form the basis for the complaint took place. Id. at § 542.14(a). If the inmate's concern is not addressed to the inmate's satisfaction by the Warden's response, the inmate may then file an appeal to the Regional Director within 20 calendar days. Id. at § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the General Counsel (Central Office) within 30 calendar days from the date of the Regional Director's response. Id. The Regional Director then has thirty (30) calendar days to respond and the General Counsel has forty (40) calendar days to address the inmate's concern. Id. at § 542.18.

As these regulations state: "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own imprisonment." 28 C.F.R. § 542.10(a). Under this grievance process:

"If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." Id. at § 542.10(c). Furthermore, under these procedures, no administrative remedy appeal is considered to have been fully exhausted until it is decided by the Central Office. 28 C.F.R. § 542, et seq.

The defendants have submitted a declaration from Attorney Advisor Michael S. Romano in which he attests that a search of the BOP SENTRY system revealed that the plaintiff did not exhaust his administrative remedies with respect to either of the inmate assaults, or the prison's housing assignments. The plaintiff responds to this argument by suggesting that the BOP's SENTRY system is unreliable, apparently because the plaintiff received confirmation that he exhausted his FTCA claims, and the plaintiff, therefore, believes this has some relevance to whether he exhausted his Bivens claims. Additionally, the plaintiff argues that a decision on whether he properly exhausted is premature and should await further discovery. Although we find that the exhaustion requirements for the FTCA and PLRA are distinct from one another, upon review of the materials that the defendants have submitted, we are unable to find as a matter of law that the plaintiff failed to exhaust his Bivens claims since evidence in the record seems to indicate that in April 2011, he filed a final level appeal of a grievance that relates to the very incidents at issue in this case.

To the extent that the plaintiff is asserting that his undisputed exhaustion of his FTCA claims has a bearing either on the exhaustion of his <u>Bivens</u> claims or on the veracity of the BOP's record keeping system, he is mistaken. In contrast to the four-step administrative review process mandated by the PLRA and BOP implementing regulations, the FTCA's administrative review requirements merely require an inmate to file his or her administrative claim for damages with the Regional Office and appeal to the General Counsel's office, which Williams has done. <u>See</u> 28 C.F.R. §§ 543.31, 543.32. Nevertheless, although arguably onerous to an inmate-plaintiff like Williams, the law requires that he exhaust administrative procedures under both the PLRA and the FTCA in order to bring <u>Bivens</u> and tort claims arising out of the same incident.

Because of the mandatory exhaustion procedures under both the PLRA and the FTCA, and the separate purposes of these procedures with respect to these different claims, courts have consistently held that fulfillment of one exhaustion requirement does not satisfy the other. <u>See, e.g.</u>, <u>Lambert v. United States</u>, 198 F. App'x 835, 840 (11th Cir. 2006) ("Although Lambert contends that his notification under the FTCA was sufficient to exhaust his <u>Bivens</u> claims, there are separate procedures for exhausting tort claims and claims involving the conditions of confinement."); <u>Brockett v. Parks</u>, 48 F. App'x 539, 541 (6th Cir. 2002) ("[Appellant's] attempts to

pursue his FTCA claim have no bearing on whether or not he exhausted his <u>Bivens</u>

claim."); <u>McKreith v. Endicott</u>, Civ. A. No. 11-CV-105, 2013 WL 990836, at *4

(E.D. Ky. Mar. 12, 2013) ("The fact that the administrative remedies filed by

[plaintiff] regarding his tort claim were somewhat related to the allegations in his

<u>Bivens</u> complaint against [the defendant] does not cure his failure to properly exhaust

his administrative remedies."); <u>Gaughan v. U.S. Bureau of Prisons</u>, No. 02 C 0740,

2003 WL 1626674, at *2 (N.D. Ill. Mar. 25, 2003) ("[A]nalysis of the case law

persuades the court that the different administrative processes serve different

functions and thus are not interchangeable."); <u>Owusu v. Federal Bureau of Prisons</u>,

No. 02 Civ.0915, 2003 WL, 68031, at *2 (S.D.N.Y. Jan. 7, 2003) ("Here, while the

plaintiff did fully exhaust the available administrative remedies for his FTCA claim,

he did not do so for his <u>Bivens</u> claim under the PLRA.  The exhaustion procedures

under the two statutes differ, and the fulfillment of one does not constitute

satisfaction of the other."); <u>Hylton v. Federal Bureau of Prisons</u>, No. CV 00-5747,

2002 WL 720605, at *2 (E.D.N.Y. March 11, 2002) (finding that "it is entirely

possible that [plaintiff] exhausted his administrative remedies for purposes of the

FTCA without exhausting administrative remedies pursuant to the PLRA for purposes

of filing a <u>Bivens</u> claim" because the plaintiff had failed to exhaust the BOP's four-

step grievance procedure); <u>cf. Funches v. Reish</u>, No. 97 Civ. 7611, 1998 WL 695904,

at *9 (S.D.N.Y. Oct. 5, 1998) (finding that a prisoner's FTCA claim was exhausted but that his <u>Bivens</u> claim was not). Indeed, although finding that the defendants had not carried their burden of demonstrating non-exhaustion, another judge of this court has previously observed the distinction between the exhaustion requirements. <u>See</u> <u>Lopez v. Brady</u>, Civ. No. 4:CV-07-1126, 2008 WL 4415585, at *10 (M.D. Pa. Sept. 25, 2008) (McClure, J.).

As these decisions make clear, the administrative exhaustion requirements under the PLRA and the FTCA are separate and distinct, and each must be independently followed in order for an inmate-plaintiff to maintain <u>Bivens</u> and negligence claims in the same suit. Accordingly, we must reject the plaintiff's suggestion that his exhaustion of his FTCA claims has any relevance to whether he also exhausted his <u>Bivens</u> claims before bringing them in this lawsuit.

However, we are also unable to embrace the defendants' assertion that their review of the SENTRY system records shows unequivocally that Williams did not exhaust his <u>Bivens</u> claims. As noted, in support for this argument the defendants rely exclusively upon an affidavit from Michael Romano, an Attorney Advisor with BOP, in which he attests that he reviewed BOP records and found that the plaintiff did not fully exhaust his <u>Bivens</u> claims. (Def. SMF, Ex. 1, Romano Decl.) In his affidavit, Romano notes that Williams's administrative remedy record is very voluminous, and

reveals that between October 2010 and December 2012, Williams filed 165 administrative remedies dealing with a host of different claims and disputes. (Id. ¶ 7.) As a result, Romano narrowed his search field to include only those claims filed between October 1, 2010, and December 3, 2012, which were fully appealed to the General Counsel; in other words, only those grievances that were *fully* exhausted in accordance with BOP regulations. (Id.) Having narrowed his search in this fashion, Romano attests that Williams appealed only 25 of his remedies to the national level. (Id.) Of these, Romano states "[n]one of these remedies pertained to the issues raised in his complaint related to either the October 22, 2010 or the January 13, 2011 assaults. (Id.) In support for this assertion, Romano refers the Court to a printout of Williams's administrative remedy record attached to the affidavit. (Id., Attach.)

Although the plaintiff has not taken specific issue with the information revealed in this record, we have carefully reviewed it and find that there is a genuine question as to whether the record shows that Williams any claim relating to his complaints about being celled with Mahasin or Light, or about the injuries that he suffered following his two assaults by these inmates. In this regard, we observe that the records attached to Attorney Advisor Romano's affidavit include a reference to Remedy No. 626980-A1, which appears to have been received by the General Counsel's office on April 14, 2011. (Def. SMF, Ex. 1, Romano Decl. (Attach.), Doc.

14-2, p. 20.) The abstract provided for this claim says simply, "Was not single celled and jaw rebroken." (Id.) For reasons that are not made clear in the abstract, the claim appears to have been denied. (Id.) The defendants do not address this entry from the SENTRY system, or explain why the filing of this particular administrative remedy appeal does not relate to the claims in this case, or otherwise justify the assertion that "[n]one of these remedies pertained to the issues raised in his complaint" when the abstract summary of the appeal seems to indicate that it relates directly to the plaintiff's claims in this case.

It is well-settled that where there are factual questions concerning the extent of an inmate's efforts to exhaust his grievances summary judgment in favor of the defendants clearly is not appropriate. See, e.g., Knauss v. Shannon, No. 08-1698, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010); Born v. Monmouth County Correctional Institution, No. 07-3771, 2008 WL 4056313 (D.N.J. Aug. 28, 2008). Such questions exist here, and are presently unresolved. Upon consideration, therefore, it is submitted that there is an unresolved question about whether this record supports the plaintiff's assertion that he did exhaust his Bivens claims before bringing this lawsuit, and we, therefore, cannot agree with the defendants that the plaintiff's Bivens claims should be dismissed on exhaustion grounds without some further compelling argument and evidence from the defendant on this point.

**B.** **The Plaintiff's <u>Bivens</u> Claims Should Not Be Dismissed at this Stage of the Litigation, Where the Plaintiff has Adequately Pled a Claim for Deliberate Indifference, and Where No Discovery Has Taken Place**

The defendants next argue that even if the plaintiff's claims are not dismissed for failure to exhaust, they should nevertheless be dismissed because the plaintiff has either not adequately pleaded his Eighth Amendment claims, or because he has not adequately created an issue of dispute fact to preclude summary judgment. Failing that, the defendants argue that they are entitled at this stage of the litigation to qualified immunity from suit. We disagree.

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). As such, prison officials have a duty to protect prisoners from violence at the hands of other prisoners under the Eighth Amendment. In order to show a breach of this duty, a plaintiff "must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." <u>Bistrian v. Levi</u>, 696 F.3d 352, 367 (3d Cir. 2012) (citing <u>Farmer</u>, 511 U.S. at 834).

The leading case in the Third Circuit addressing deliberate indifference in a prison conditions context is found in Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001). As a starting place, the Third Circuit has explained the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." Id. As discussed more fully below, this deliberate indifference standard "is a subjective standard under Farmer – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Id.

As explained in Beers-Capitol, in cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for

denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837).  This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates.  The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates.  Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842.  The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.  Although the Third Circuit has recognized that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim, see, e.g, Jones v. Beard, 145 F. App'x

743 (3d Cir. 2005), the Third Circuit did interpret <u>Farmer</u> to signal that "a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]"  However, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence to showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information or indicators that presented a substantial risk to inmate safety.  See <u>Farmer</u>, 511 U.S. at 842-43 ("If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was <u>longstanding, pervasive, well-documented, or expressly noted by prison officials in the past</u>, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk <u>and thus must have known about it</u>, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk.") (emphasis added).

Even where a plaintiff has presented sufficient evidence to allow a factfinder to reach the inference that a prison official had knowledge of the risk on the basis that risk was obvious, it is clear that an inference may not be compelled, and that the prison official must be permitted to show that he was actually unaware of the risk in question.  <u>Beers-Capitol</u>, 256 F.3d at 132.  Lastly, a prison official who is shown to have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he

shows that he responded reasonably to the risk, even if the response did not avoid the ultimate harm.  Id.

In addition to the foregoing analysis applicable to claims brought against supervisors under the Eighth Amendment alleging deliberate indifference to a known excessive risk, the Third Circuit also recognizes that supervisors may be exposed to liability on the basis that they maintained deficient policies that resulted in the plaintiff sustaining an Eighth Amendment injury.  In these kinds of cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test based upon the reasoning of City of Canton v. Harris, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise.  Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that:  (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  Beers-Capitol, 256 F.3d at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  Accordingly, these approaches are summarized as follows:

> In sum, to make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk ...  posed, the plaintiffs must meet the test

27

from <u>Farmer v. Brennan</u>: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious. For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, <u>Sample's</u> four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

<u>Id.</u> at 135.

After explaining the foregoing legal standards applicable to claims such as those brought in the case at bar, the Third Circuit noted that in order to defeat a motion for summary judgment, a plaintiff alleging deliberate indifference on the part of prison officials "must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm." <u>Id.</u> at 132.

Guided by these legal standards, and mindful of the pleading standards that a plaintiff must satisfy in order to defeat a motion to dismiss, we conclude that the defendants' have not carried their burden of showing either that the plaintiff has failed to plead an Eighth Amendment claim for deliberate indifference, or that summary judgment is warranted on this claim based solely on the defendants' own declarations.

The plaintiff's amended complaint contains allegations that Williams repeatedly asked the defendants to move him from his cell with Mahasin, and observed that he had serious medical problems, had been labeled as a "snitch," and had notified the defendants on multiple occasions that he felt he was in imminent danger. The defendants demur, and argue that the plaintiff's allegations are no more than mere conclusions that are not entitled to the assumption of truth. (Doc. 14, at 11-14.) In support of their argument that the amended complaint is unacceptably conclusory, the defendants rely on the Third Circuit's recent decision in <u>Bistrian v. Levi</u>, 696 F.3d 352 (3d Cir. 2012), which involved somewhat similar circumstances.

In <u>Bistrian</u>, the court of appeals summarized its scope of review in determining whether or not a complaint meets the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure:

> First, we outline the elements a plaintiff must plead to state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give risk to an entitlement to relief.

696 F.3d at 365.

In this case, we find that Williams's allegations are more than threadbare recitals of a claim's elements, and the allegations are not improperly conclusory. Williams has alleged that he suffers from serious medical conditions, including a limp

leg and persistent back problems, and that he has additionally been labeled a "snitch". (Am. Compl., ¶¶ 1, 15, 47-49, 68, 76, 78, 83.) Williams has also alleged that risks he faced due to inmate gang affiliations – allegations that the defendants have disputed by referring to their internal records, but which are nonetheless adequately pled. (Id. ¶¶ 48-49.) More importantly, Williams alleged that he provided multiple written and verbal warnings and pleas to the defendants that he was in danger and needed to be re-celled, prior to being viciously assaulted on two separate occasions by his cell mates. (Id. ¶¶ 15-38, 50-59.) We agree with the plaintiff that these allegations are sufficient at least to state a claim for relief on his Bivens claims, and we observe that these allegations are substantially similar to those that the Third Circuit found adequate to state a claim in Bistrian. See 696 F.3d at 368-69 ("Bistrian plausibly alleges that certain prison officials actually knew that he faced an excessive risk of harm by being placed in the SHU recreation yard . . . because he repeatedly advised (both verbally and in writing) FDC officials . . . of the multiple threats.").

The defendants argue that the plaintiff should be required to provide far more factual detail in support of his claims than is required under the law. Thus, the defendants suggest that the plaintiff should have to define "snitch" for prison officials, or explain more fully in the pleading how such a label creates a risk to inmates in a prison population – particularly a population like that held in the SMU

at USP-Lewisburg. Nothing in <u>Bistrian</u> requires this level of specificity, and we do not agree that the absence of further definition in the pleading mandates that the complaint be dismissed.

Likewise, the defendants suggest that the plaintiff should be faulted for failing to "identify what the contents of the oral communications and letters were beyond a general request to move to avoid problems." (Doc. 14, at 13.) Although more detail regarding the nature of these allegations may come out through discovery, we agree with the plaintiff that he identified the contents of his communications with sufficient particularity in that he claims that he provided more than 10 written warnings to prison officials, and that he "specifically warn[ed] that a physical altercation was likely if he was not transferred to another cell." (Am. Compl., ¶¶ 15-37.) The plaintiff's allegations in this regard, taken in the context of all of the facts pled, and the undisputed fact that the plaintiff was twice assaulted in the course of three months, following multiple warnings and requests to prison officials, causes us to find that the amended complaint adequately states an Eighth Amendment claim based on the defendants' alleged failure to protect the plaintiff from harm at the hands of Mahasin and Light.

We also agree with the plaintiff that summary judgment in this case is premature. In response to the plaintiff's claims, the defendants have responded by

submitting declarations in which they attest that they did not receive the warnings that the plaintiff claims to have given them. (Def. SMF, Exs. 4-10, Declarations.) These defendants also attest that if the plaintiff had warned them, they would have taken steps to address the concerns, including by referring the matter to prison investigators, or otherwise by taking appropriate action, including separating the inmates if there was found to be an immediate safety concern. (Id.)

The defendants seem to argue that because they have responded to the plaintiff's claims by asserting, through sworn declarations, that they did not receive the warnings he claims to have given them, that they are now entitled to summary judgment. However, these declarations do not eliminate a factual dispute; rather, they define such a dispute. Upon consideration, we believe that a decision on whether or not the defendants are entitled to summary judgment in this regard – based on a finding by the Court that the defendants did not receive the repeated warnings and other notice alleged in the complaint – should await further discovery and resolution of what appear currently to be disputed facts. The defendants essentially ask the Court to accept, at this point in the litigation, general attestations that they have not found correspondence in their files from the plaintiff, or that they do not recall

receiving oral or written communications from the plaintiff.[7]  We believe the Court

should decline this invitation at this point, both because the plaintiff has asserted that

he requires further discovery in order to respond to the defendants' declarations, and

also because the allegations in the complaint are specific and in direct conflict with

the defendants' own representations.  For these reasons, we submit that the plaintiff's

Bivens claims should not be resolved in the defendants' favor at this stage of the

action.[8]  Likewise, because we find that the plaintiff has had inadequate opportunity

to undertake discovery into his claims, and otherwise because there remain disputed

---

[7]  Moreover, the defendants have attested that if they did receive such warnings, they would have taken appropriate steps in response, including to separate inmates who posed an immediate risk to one another.

[8]  We note further that in civil litigation, "[t]he court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." Dowling v. City of Philadelphia, 855 F.2d 136, 139 (1988).  The Federal Rules of Civil Procedure specifically guard against the possibility that a motion for summary judgment will be prematurely decided, before a plaintiff has had a chance to engage in discovery to rebut the defendants' affidavits or other evidence.  Fed. R. Civ. P. 56(d).  That rule permits the nonmoving party to request that the court deny a motion for summary judgment, or defer its consideration, if he shows "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  In this case, the plaintiff has submitted an affidavit from his counsel setting forth the discovery believed to be necessary to develop his claims.  (Doc. 22, Ex. A.)  Upon consideration, we believe that the plaintiff should be given some opportunity to take discovery in support of his claims, and to respond to the defendants' motion for summary judgment, and, therefore, we recommend that the Court decline to grant summary judgment in the defendants' favor at this early point in this litigation.

issues of fact in this case, we recommend that the Court decline to grant the individuals qualified immunity at this early stage.  See, e.g., Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006) (although qualified immunity is a question of law to be determined by the court, when that immunity depends on disputed issues of fact, those factual issues must be resolved before qualified immunity issue can be decided).

### C. Plaintiff's FTCA Claims Should Be Permitted to Proceed at this Stage of the Litigation

In addition to his Bivens claims, the plaintiff has brought a claim against the United States under the FTCA, alleging that prison officials were negligent in failing to protect him from attack by Mahasin and Light, despite his alleged repeated requests to be transferred out his cell  assignments with these inmates.  The United States argues that this claim fails as a matter of law because the so-called discretionary function exception to the FTCA effectively bars any recovery under precisely this factual situation.  Upon consideration of the law in this field, and mindful of the broad discretion that prison officials are afforded in overseeing the custody of federal inmates in penitentiaries like USP-Lewisburg, we nevertheless find that resolution of this claim should also await some limited discovery in order to

determine whether the exception applies to the circumstances that are alleged to have occurred between October 22, 2010, and January 13, 2011.

"The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances.'" Sosa v. Alvarez-Machain, 542 U.S. 692, 700 (2004) (quoting Richards v. United States, 369 U.S. 1, 6 (1962)); CNA v. United States, 535 F.3d 132, 138 (3d Cir. 2008). Under the FTCA federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). A person is permitted to sue under the FTCA to recover damages from the United States for personal injuries that he suffered during confinement in a federal prison that resulted from the negligence of a government employee. See Rinaldi v. United States, No. 1:09-CV-1700, 2010 U.S. Dist. LEXIS 66024, at *11 (M.D. Pa. July 1, 2010) (Rambo, J.) (citing United States v. Muniz, 374 U.S. 150 (1963)).

The FTCA's waiver of sovereign immunity for tort claims in a prison context is tempered, however, by a number of statutory exemptions including a "discretionary function" exemption set forth in 28 U.S.C. § 2680(a), which provides that liability may not be premised on a claim against a government employee which is "... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty...".

In a federal prison setting:

> To determine if the discretionary function exception applies, a court must first determine if the challenged conduct involves an " 'element of judgment or choice.' " See Mitchell v. United States, 225 F.3d 361, 363 (3d Cir.2000) (citing United States v. Gaubert, 499 U.S. 315, 322-23 (1991) and Berkovitz v. United States, 486 U.S. 531, 536 (1988), and noting that there is no element of judgment or choice if " 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow' "). If the challenged conduct involves an element of judgment, a court must go on to consider " 'whether that judgment is of the kind that the discretionary function exception was designed to shield.' " Id.

Brown v. U.S. Justice Dep't., 271 F.App'x. 142, 145 (3d Cir. 2008). See Koch v. United States, 814 F.Supp. 1221, 1227 (M.D.Pa. 1993) (McClure, J.) The discretionary function "exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals' United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797,

808(1984)." Cestonaro v. United States, 211 F.3d 749, 753 (3d Cir.2000). As a jurisdictional boundary line, if an act falls within the discretionary function exception, then there has been no waiver of sovereign immunity as to that conduct and the court lacks subject matter jurisdiction to entertain a tort claim against the United States. See Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998).

Here, the plaintiff's tort claims, which arise in the context of an inmate assault within a federal prisoner, risk transgressing this jurisdictional boundary defined by the FTCA's discretionary function exemption since:

> Courts within this circuit and others have uniformly held that federal prisoners' FTCA claims for injuries by fellow inmates are barred by the discretionary function exception. See, e.g., Donaldson v. United States, 281 F. App'x 75, 76-78 (3d Cir.2008); Castillo v. United States, 166 F. App'x 587, 589 (3d Cir.2006); Michtavi v. United States, C.A. No. 4:07-CV-0628, 2009 WL 578535, at *9-10 (M.D.Pa. Mar.4, 2009); Baker v. United States, C.A. No. 06-147, 2006 WL 3717382, at *6 (W.D.Pa. Dec. 14, 2006); Macias v. United States, C.A. No. 05-1445, 2006 WL 1843111, at *3-4 (D. N.J. June 30, 2006); Redmond v. United States, C.A. No. 4:04-CV-231, 2006 WL 709347, at *3-4 (M.D.Pa. Mar.20, 2006); Graham v. United States, C.A. No. 97-1590, 2002 WL 188573, at *4 (E.D.Pa. Feb.5, 2002). While prison officials have a statutory duty to provide for the "safekeeping" of inmates, 18 U.S.C. § 4042, this statute leaves the implementation of these duties to the discretion of prison officials, and "how best to protect one inmate from the threat of attack by another is of the kind that the discretionary function exception was designed to shield." Donaldson, 281 F. App'x at 77.

Rinaldi v. United States, No. 09-1700, 2010 WL 4642498, *4 (M.D.Pa. Nov. 9,

2010).

Indeed, the United States Court of Appeals for the Third Circuit has spoken directly to this issue in a way that appears to address the question of whether a federal inmate may maintain a tort claim against the government for its allegedly negligent placement of a prisoner with other inmates who later harm him. See, e.g., Donaldson v. United States, 281 F. App'x 75, 76-78 (3d Cir.2008); Castillo v. United States, 166 F. App'x 587, 589 (3d Cir.2006). In terms that may ultimately be applicable here, the court of appeals held that the discretionary function exemption applied in that dispute and barred FTCA claims against the government.

In reaching this result the court reasoned that both elements of the FTCA's discretionary function exemption were fully satisfied in this setting. First, the court found that, while the Bureau of Prisons has a statutory obligation to ensure inmate safety, "the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." Donaldson v. United States, 281 F..App'x. 75, 77 (3d Cir. 2008)(citations omitted). The court of appeals then concluded that:

> [T]he judgment involved in this case- i.e., how best to protect one inmate from the threat of attack by another-"is of the kind that the discretionary function exception was designed to shield." Mitchell, 225 F.3d at 363. Prison administrators should be afforded wide-ranging

deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547-48,(1979). Supreme Court authority underscores the principle that prison officials have discretionary power over the safety of the institutions they operate. See Rhodes v. Chapman, 452 U.S. 337, 349 n. 14,(1981); see also Whitley v. Albers, 475 U.S. 312, 321-22 (1986). Likewise, courts of appeals have applied the discretionary function exception to bar an inmate's claims for injuries he received while incarcerated. See Calderon, 123 F.3d at 948, 951 (discretionary function exception barred FTCA claim despite evidence that BOP officials knew of the threat to inmate and took *no steps* to protect him); Cohen, 151 F.3d at 1344 (discretionary function exception shielded the BOP from FTCA liability, where an inmate that the BOP had misclassified attacked and injured the plaintiff); Alfrey v. United States, 276 F.3d 557, 565 (9th Cir.2002) (where BOP officials' decision not to relocate an inmate in the face of death threats from his cellmate resulted in the inmate's death, "what steps to take in response to a reported threat" required correctional officers to "set priorities among all extant risks: the risks presented by the reported threat, along with the other risks that inevitably arise in a prison," all of which "implicate social and public-policy considerations."). In accordance with these authorities, we find that the BOP's decisions about how to protect [inmates from assaults by fellow prisoners] are the kinds of judgments that the discretionary function exception was designed to protect.

Id. at 77-78.

Although we are mindful of the foregoing cases and the considerable restriction on inmates suits in this particular field owing to the discretionary function exception's broad reach, we nevertheless find in this case that a decision on whether the plaintiff's FTCA claims are barred should await some additional discovery and, if appropriate, a subsequent motion for summary judgment. The individual USP-

Lewisburg officials have submitted declarations attesting to their recollection that they never received any warnings from the plaintiff, and that he never notified them about his acute concerns regarding his cell mates and his repeated request to be transferred to a new cell. (Def. SMF, Exs. 4-10, Declarations.) Yet, in those declarations, the defendants also represented that if they had been presented with an inmate concern, it would have been referred to the Special Investigative Service for follow-up. Moreover, these individual officials each attested that if they were faced with an immediate safety concern, they would have re-assigned the plaintiff to another cell. (Id.)

In an abundance of caution, we believe that dismissal of the plaintiff's claims is unwarranted at this time. The confluence of the plaintiff's allegations, the defendants' representations about their lack of notice, and their unequivocal assertions about the actions they would have taken if the plaintiff had provided the notice he alleged have created questions of fact that may ultimately bear upon the plaintiff's FTCA claims in this particular case. C.f., Gray v. United States, 486 F. App'x 975 (3d Cir. 1012)(unequivocal prison policy may create factual regarding application of FTCA discretionary function exception). While these questions may ultimately prove unavailing for the plaintiff, we nevertheless submit that dismissal of these claims at this early point of the litigation is inappropriate given the open

questions that exist about the plaintiff's cell assignments and the instances of repeated

assault that he claims to have suffered at the hands of his cell mates.[9]

---

[9] In recommending that the Court permit the plaintiff's <u>Bivens</u> and FTCA claims to proceed for at least limited discovery, we observe for the plaintiff that he may wish to reassess the claims brought in this case, or otherwise proceed with caution if he elects to maintain both <u>Bivens</u> and FTCA claims relating to the injuries alleged in this case. Although the Supreme Court has stated that it is "crystal clear that Congress views FTCA and <u>Bivens</u> as parallel, complementary causes of action," <u>Carlson v. Green</u>, 446 U.S. 14, 19-20 (1980), there may be significant risk to plaintiffs who attempt to litigate such claims in tandem. The FTCA contains within it a judgment-bar rule that can have serious and, it appears, often unforeseen consequences for litigants. The judgment bar provides:

> The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.

28 U.S.C. § 2676. Courts have held that <u>Bivens</u> and FTCA claims are "of the same subject matter" where they have "aris[en] out of the same actions, transactions, or occurrences." <u>Estate of Trentadue ex rel. Aguilar v. United States</u>, 397 F.3d 840, 858 (10th Cir. 2005) (citing <u>Serra v. Pichardo</u>, 786 F.2d 237, 239-40 (6th Cir. 1986)). Courts have found that the FTCA judgment bar applies to claims brought in the same suit. <u>Manning v. United States</u>, 546 F.3d 430, 433 (7th Cir. 2008). A plaintiff who pursues both Bivens and FTCA claims relating to the same incidents runs "the risk that a judgment on the FTCA claim would nullify [a] <u>Bivens</u> judgment." Because there is some uncertainty in the case law regarding the application of the judgment bar in these cases, <u>see</u> <u>Kreider v. Breault</u>, No. Civ. A. 10-3205, 2012 WL 3518470 (E.D. Pa. Aug. 15, 2012) (discussing differences in judicial application of the judgment-bar rule), because the Third Circuit has not spoken on this issue, <u>id.</u>, and because the parties have not addressed in any way the potential implication of this rule on the claims in this case, we find it inappropriate to comment further on this potential issue. However, we note only that this is a matter that is commended to the parties' consideration if this litigation is permitted to progress.

## V.     RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED

THAT the defendants' motion to dismiss or, in the alternative, for summary judgment

(Doc. 7) be DENIED, without prejudice to the defendants renewing their request for

dispositive relief in properly supported motion for summary judgment filed after the

parties have an opportunity to engage in discovery.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections.  The briefing requirements set
forth in Local Rule 72.2 shall apply.  A judge shall make a de novo
determination of those portions of the report or specified proposed
findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis of
that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Submitted this 8th day of August 2013

_**S/Martin C.  Carlson**_
Martin C. Carlson
United States Magistrate Judge